**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED
JUN 25 2024
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| IOWA PORK PRODUCERS ASSOCIATION, | No. 22-55336 |
| Plaintiff-Appellant, | D.C. No. 2:21-cv-09940-CAS-AFM |
| v. | |
| ROB BONTA, in his official capacity as Attorney General of California; et al., | MEMORANDUM* |
| Defendants-Appellees, | |
| and | |
| HUMANE SOCIETY OF THE UNITED STATES; et al., | |
| Intervenor-Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted January 9, 2024
Pasadena, California

Before: CALLAHAN, CHRISTEN, and BENNETT, Circuit Judges.
Concurrence by Judge CALLAHAN.

---

   *   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appellant Iowa Pork Producers Association ("IPPA") appeals the district court's order denying IPPA's motion for a preliminary injunction and its order granting Appellees' motion to dismiss. Because the parties are familiar with the facts, we do not recount them here. "We review de novo an order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's dismissal of IPPA's complaint.[1]

1. We begin with IPPA's claim that Proposition 12 unconstitutionally discriminates against interstate commerce in violation of the dormant Commerce Clause. "If a statute discriminates against out-of-state entities on its face, in its purpose, or in its practical effect, it is unconstitutional unless it 'serves a legitimate local purpose, and this purpose could not be served as well by available nondiscriminatory means.'" *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quoting *Maine v. Taylor*, 477 U.S. 131, 138 (1986)).

On its face, Proposition 12 does not discriminate against out-of-state pork

---

[1] "Because we affirm the district court's Rule 12(b)(6) dismissal of the complaint, . . . we need not separately address the question whether the denial of the [plaintiff's] motion for a preliminary injunction was proper." *See Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1291 n.1 (9th Cir. 2015).

producers.  As codified, Proposition 12 provides that any "business owner or operator," regardless of their location, "shall not knowingly engage in the sale within" California of any pork meat derived from a breeding pig "confined in a cruel manner."  Cal. Health & Safety Code § 25990(b).  Where a statute—like Proposition 12—bans the sale of a product, regardless of whether the product is intrastate or interstate in origin, it is not discriminatory.  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) (holding that a statute banning the sale of any product resulting from force feeding a bird, regardless of the product's origin, was not discriminatory).  Because the statute "treats all private companies exactly the same," it "does not discriminate against interstate commerce."  *Id.* (alteration accepted) (quoting *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342 (2007)).

Nor has IPPA adequately alleged that Proposition 12 has a discriminatory purpose.  IPPA asserts that California enacted Proposition 12 to "avoid negative fiscal impacts to the State of California."  But Proposition 12's stated purpose "is to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of California consumers, and increase the risk of foodborne illness and *associated* negative fiscal impacts on the State of California."  Prop. 12, § 2 (2018) (emphasis added).  This statement reflects a concern about fiscal impacts associated with foodborne illness, and

cannot support an inference that California sought to discriminate against out-of-state producers by enacting Proposition 12.[2]

As for discriminatory effects, IPPA notes that Proposition 12 was enacted against the backdrop of California's Proposition 2, which prohibits in-state pork producers from confining breeding pigs in conditions where they cannot turn around. Prop. 2, § 3 (2008). IPPA argues California imposed similar restrictions on out-of-state pork producers by enacting Proposition 12 and contends this had the effect of benefiting in-state producers who had been competitively disadvantaged by Proposition 2. IPPA also alleges that Proposition 2 gave in-state producers six years to comply with its turnaround provisions, whereas Proposition 12 gave producers less than six weeks to comply with its turnaround provisions and only three years to comply with its square footage requirements. *See* Cal. Health & Safety Code § 25991(e).

Contrary to IPPA's characterization, Proposition 12 did not extend the provisions of Proposition 2 to out-of-state producers. Proposition 2 imposed

---

[2] IPPA also alleges the California Department of Food and Agriculture ("CDFA") "explicitly noted that, unless out-of-state farmers are required to comply with the confinement requirements as well, '[i]n-state farms will find it more costly to compete with farms outside of the state when selling . . . whole pork meat to an out of state buyer compared to farms located in states that do not have the same animal confinement standards as described in the Act.'" But rather than revealing protectionist intent, this statement suggests that Proposition 12 may place in-state farms at a competitive disadvantage with respect to sales to out-of-state buyers.

4

turnaround provisions on all breeding pigs located in California, regardless of where pork derived from those pigs might ultimately be sold. Prop. 2, § 3 (2008). Proposition 12, by contrast, requires all pork producers who *sell* pork meat in California to comply with certain confinement standards, including turnaround provisions and square footage requirements. *See* Cal. Health & Safety Code § 25991(e). Although in-state producers may have felt less impact from Proposition 12 because they were already subject to the turnaround provisions of Proposition 2, that does not demonstrate that Proposition 12 discriminates against out-of-state producers. *See Eleveurs*, 729 F.3d at 948 (noting that a statute is not discriminatory "even when only out-of-state businesses are burdened because there are no comparable in-state businesses" (citing *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 119-20, 125 (1978))). The district court properly concluded that IPPA did not adequately allege discrimination under the dormant Commerce Clause.[3]

    2.    We next address IPPA's claim that Proposition 12 is unconstitutional

---

[3] To the extent IPPA relies on the CDFA's answers to Frequently Asked Questions, those answers make no distinction between in-state and out-of-state businesses. *See Animal Care Program*, CDFA (Mar. 5, 2021), www.cdfa.ca.gov/AHFSS/pdfs/Prop_12_FAQ_March_2021.pdf. IPPA also contends that California's implementing regulations, which were not presented to the district court, enhance the discriminatory effects of Proposition 12. But we may not consider matters outside the complaint when reviewing a motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

under the dormant Commerce Clause because it imposes an excessive burden on interstate commerce. A statute is unconstitutional under the dormant Commerce Clause where "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Rocky Mountain*, 730 F.3d at 1087-88 (alteration in original) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)).

We previously considered and rejected such a challenge to Proposition 12 in *National Pork Producers Council v. Ross (NPPC I)*, 6 F.4th 1021 (9th Cir. 2021). The Supreme Court later affirmed in a fractured decision. *See Nat'l Pork Producers Council v. Ross (NPPC II)*, 598 U.S. 356 (2023). We conclude that *NPPC I* remains controlling in this circuit because a majority of the Justices in *NPPC II* did not agree upon a "single rationale" and there is no opinion in that case that "can reasonably be described as a logical subset of the other." *United States v. Davis*, 825 F.3d 1014, 1021-22 (9th Cir. 2016) (en banc); *see also Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).[4]

In *NPPC II*, a majority of the Court held that the plaintiff's challenge to Proposition 12 fell "well outside *Pike*'s heartland," but did not agree on the underlying reasoning. 598 U.S. at 380; *id.* at 377-89. A four-justice plurality concluded that the plaintiff had not met its initial burden of showing the

---

[4] Indeed, IPPA conceded at oral argument that our court is bound by *NPPC I*.

"challenged law imposes 'substantial burdens' on interstate commerce." *Id.* at 383, 386-87 (plurality opinion). Three justices separately reasoned that the case demanded a comparison of "incommensurable" goods, which is "a task no court is equipped to undertake." *Id.* at 382 (three-justice opinion).

Because the Court did not agree upon a single rationale for affirming, and neither of the two rationales is a "logical subset" of the other, "only the specific result [in *NPPC II*] is binding on lower federal courts." *Davis*, 825 F.3d at 1022; *see also Ballinger v. City of Oakland*, 24 F.4th 1287, 1295 (9th Cir. 2022) (recognizing that, "when determining the holding of a fractured Supreme Court decision[,] only the opinions of those who concurred in the judgment[] can be considered").[5] Because only the result in *NPPC II* is binding, and there is no controlling reasoning, we remain bound by our decision in *NPPC I*.

---

[5] The concurrence's analysis of *NPPC II* disregards the settled rule that dissents may not be considered when interpreting the holding of a splintered Supreme Court decision. *See Marks v. United States*, 430 U.S. 188, 193 (1977) (limiting review to opinions of "those Members [of the Court] who concurred in the judgments" (citation omitted)). In our 2016 en banc decision in *Davis*, we "assume[d] but [did] not decide that dissenting opinions may be considered in a *Marks* analysis," and noted that doing so would not have changed our conclusion in that case. 825 F.3d at 1025; *see also id.* at 1025 n.12 ("We emphasize here . . . that we do not decide that issue."). Although we left the question unresolved in *Davis*, we squarely decided it in *Ballinger*, where we rejected the argument that a controlling rationale could be derived from a concurrence and a four-justice dissent. *Ballinger*, 24 F.4th at 1295 (holding that "[d]issenting opinions cannot be considered when determining the holding of a fractured Supreme Court decision"); *see also Miller*, 335 F.3d at 900.

Under *NPPC I*, a plaintiff "must, at a minimum, plausibly allege the ordinance places a significant burden on interstate commerce." 6 F.4th at 1032 (citation and internal quotation marks omitted). The plaintiffs in *NPPC I* could not satisfy that burden—which is met "only in rare cases"—because "laws that increase compliance costs, without more, do not constitute a significant burden on interstate commerce." *id.*; *see also id.* at 1033.

Here, as in *NPPC I*, IPPA argues that complying with Proposition 12 will require costly alterations to its infrastructure and substantial new training and labor.[6] *See id.* at 1033 (noting that the "crux" of the plaintiffs' allegations was that "the cost of compliance with Proposition 12 makes pork production more expensive nationwide"). But "[t]he mere fact that a firm engaged in interstate commerce will face increased costs as a result of complying with state regulations does not, on its own, suffice to establish a substantial burden on interstate commerce." *Id.* at 1032 (citation omitted). Moreover, "a non-discriminatory regulation that 'precludes a preferred, more profitable method of operating in a retail market'" does not "place a significant burden on interstate commerce," even

---

[6] To the extent IPPA argues that Proposition 12 has an "impermissible extraterritorial effect," the *NPPC I* court already concluded that "state laws that regulate only conduct in the state, including the sale of products in the state, do not have impermissible extraterritorial effects." 6 F.4th at 1029.

8

if it inflicts "heavy burdens on some out-of-state sellers." *Id.* (citation omitted). We conclude the district court properly dismissed IPPA's *Pike* claim.

3. We next consider IPPA's as-applied vagueness challenge. A regulation "is unconstitutionally vague if it does not give 'a person of ordinary intelligence fair notice of what is prohibited.'" *Tingley v. Ferguson*, 47 F.4th 1055, 1089 (9th Cir. 2022) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). Where criminal sanctions are involved, as is the case here, Cal. Health & Safety Code § 25993(b), "the standards of certainty [are] higher than" in the case of civil sanctions. *Maldonado v. Morales*, 556 F.3d 1037, 1045 (9th Cir. 2009) (citation omitted).

Section 25990(b) makes it unlawful to "knowingly engage in the sale" within California of non-compliant pork meat. The statute further provides that "a sale shall be deemed to occur at the location where the buyer takes physical possession of an item covered by [the statute]." Cal. Health & Safety Code § 25991(o).

IPPA first argues that "engage in" is unconstitutionally vague because it could apply to anyone in the supply chain. We disagree.

The term "engage in" is widely used and readily understood. Generally, to "engage in" an activity means to "take part in" that activity. *See, e.g.*, *Engage*, Black's Law Dictionary (11th ed. 2019) ("To employ or involve oneself; to take

part in; to embark on"). IPPA insists that entities upstream of a sale in California might be deemed to have "engaged in" that California sale. Upstream entities, by virtue of being upstream, are not engaging in the ultimate sale in California; rather, they are engaging in earlier, separate sales.[7]

IPPA also makes the derivative argument that "knowingly," as used in § 25990(b), is impermissibly vague because one cannot *know* whether one is "engaging in a sale" in California. This argument is premised upon IPPA's contention that the phrase "engaging in" is unconstitutionally vague. Because "engaging in" a California sale is not unconstitutionally vague, however, one would understand what it means to "know" one is taking part in such a sale. *See* Cal. Penal Code § 7 (to act "knowingly" is to act with "knowledge that the [operative] facts exist"); *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."). One knowingly engages in the sale of pork meat in California if one takes part in a sale with knowledge that the buyer will take possession of the pork meat in California.

    4.    IPPA also raises a facial vagueness challenge. Where a challenged

---

[7] To the extent IPPA challenges the regulations accompanying Proposition 12, those regulations are not identified in the complaint and are therefore not before the court. *See Lee*, 250 F.3d at 688.

law does not implicate First Amendment rights, a party raising a facial challenge "must demonstrate that the enactment is impermissibly vague in all of its applications." *Hess v. Bd. of Parole & Post-Prison Supervision*, 514 F.3d 909, 913 (9th Cir. 2008) (citation omitted). Because Proposition 12 does not implicate First Amendment rights, it is only facially vague if it specifies "no standard of conduct . . . at all." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1020 (9th Cir. 2013) (citation omitted). Because the statute is sufficiently clear as applied to IPPA, it is not "impermissibly vague in all of its applications." *Hess*, 514 F.3d at 913 (citation omitted).

  5. We now address IPPA's claim under the Privilege and Immunities Clause, which provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. art. IV, § 2, cl. 1. To state a claim, IPPA "must show that the challenged law treats nonresidents differently from residents and impinges upon a 'fundamental' privilege or immunity protected by the Clause." *Marilley v. Bonham*, 844 F.3d 841, 846 (9th Cir. 2016) (en banc) (citation omitted). IPPA cannot do so because Proposition 12 treats all businesses the same by prohibiting all of them from selling non-compliant pork, regardless of where they reside. *See* Cal. Health & Safety Code § 25990. Thus, citizens of other states are on "the same footing" as citizens of California. *See McBurney v. Young*, 569 U.S. 221, 226 (2013) (citation

omitted).

6. IPPA contends that Proposition 12 is impliedly preempted by the Packers and Stockyards Act based on principles of conflict preemption. A federal statute preempts state law where "a party's compliance with both federal and state requirements is impossible," or where "state law poses an obstacle to the accomplishment of Congress's objectives." *Whistler Invs., Inc. v. Depository Tr. & Clearing Corp.*, 539 F.3d 1159, 1164 (9th Cir. 2008).

The Packers and Stockyards Act makes it unlawful "for any packer or swine contractor" to "[m]ake or give any undue or unreasonable preference or advantage to any particular person or locality in any respect, or subject any particular person or locality to any undue or unreasonable prejudice or disadvantage in any respect." 7 U.S.C. § 192(b). IPPA argues that Proposition 12 requires packers and wholesalers to favor in-state pork producers, who have had more time to comply with the requirements of Proposition 12. But Proposition 12 does not require packers or wholesalers to favor or disfavor any pork producers based on their location. It instead prohibits packers and wholesalers from selling non-compliant pork meat in California, regardless of where such meat originates. *See* Cal. Health & Safety Code § 25990. IPPA does not allege that out-of-state producers are unable to comply with California's requirements, such that Proposition 12 requires packers and wholesalers to prefer in-state producers. Thus, Proposition 12 does

not render it impossible to comply with the Packers and Stockyards Act, nor serve as an obstacle to its purposes and objectives.

      **AFFIRMED.**

CALLAHAN, Circuit Judge, concurring in the judgment:

I join the court in holding that we are bound by *National Pork Producers Council v. Ross (NPPC I)*, 6 F.4th 1021 (9th Cir. 2021). As the memorandum disposition explains, none of the opinions in *National Pork Producers Council v. Ross (NPPC II)*, 598 U.S. 356 (2023) "can reasonably be described as a logical subset of the other." *See United States v. Davis*, 825 F.3d 1014, 1021–22 (9th Cir. 2016) (en banc). I also find it significant that IPPA concedes that the result in *NPPC I* controls. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[W]e rely on the parties to frame the issues for decision . . . .").

I write separately, however, to note that there may indeed be a "single underlying rationale" in *NPPC II* that would have saved IPPA's *Pike* claim. *See Davis*, 825 F.3d at 1021–22. By my count, a majority of the Justices would find that (i) Proposition 12 is compatible with *Pike* balancing, and (ii) IPPA plausibly alleged that Proposition 12 imposes a substantial burden on interstate commerce. In view of this, were we not bound by *NPPC I*, remand to the district court would have been appropriate "to decide whether [IPPA] stated a claim under *Pike*." *NPPC II*, 598 U.S at 395 (Roberts, C.J., concurring in part and dissenting in part).[1]

---

[1] The majority says my analysis "disregards" a rule that courts cannot consider dissents when interpreting fractured Supreme Court decisions. Mem. Disp. n.5. The opposite is true. The last time this court sat en banc to interpret *Marks* it looked at the votes of *all* Supreme Court justices from a fractured decision. *See Davis*, 825 F.3d at 1025 (considering Chief Justice Roberts's dissent in *Freeman v.*

**Proposition 12 Is Compatible with *Pike* Balancing**

To begin, only three Justices believe that Proposition 12 is incompatible with *Pike* balancing. According to Justices Gorsuch, Thomas, and Barrett, weighing the burdens of Proposition 12 on interstate commerce with the moral and health interests of California is "a task no court is equipped to undertake." *NPPC II*, 598 U.S. at 381–82 (Part IV-B).

Six Justices disagree. Chief Justice Roberts—joined by Justices Alito, Kavanaugh, and Jackson—explained that when it comes to Proposition 12, "a majority of the Court agrees that it is possible to balance benefits and burdens under the approach set forth in *Pike*." *Id.* at 397 (Roberts, C.J., concurring in part and dissenting in part.). Justices Sotomayor—joined by Justice Kagan—similarly found Proposition 12 capable of judicial balancing. *Id.* at 392–93 (Sotomayor, J., concurring in part) ("Justice Gorsuch, for a plurality, concludes that petitioners' *Pike* claim fails because courts are incapable of balancing economic burdens against noneconomic benefits. I do not join that portion of Justice Gorsuch's

---

*United States*, 564 U.S. 522 (2011) to explain why "the plurality and dissent do not share common reasoning whereby one analysis is a logical subset of the other.") (internal quotations omitted). The statement in *Ballinger* about *Marks*, which was not "germane to the eventual resolution of [*Ballinger*]," does not change this. *See United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019); *see also United States v. Orozco-Orozco*, 94 F.4th 1118, 1128 (9th Cir. 2024) (explaining that statements regarding "non-litigated issues" cannot be "precedential holdings binding future decisions").

opinion. . . . I agree with the Chief Justice that courts generally are able to weigh disparate burdens and benefits against each other, and that they are called on to do so in other areas of the law with some frequency."). *See also id.* at 403 (Kavanaugh, J., concurring in part and dissenting in part) ("In today's fractured decision, six Justices of this Court affirmatively retain the longstanding *Pike* balancing test for analyzing dormant Commerce Clause challenges to state economic regulations.").

**Proposition 12 Imposes a Substantial Burden on Interstate Commerce**

Writing separately, Justice Barrett stated that *if* the "burdens and benefits [of Proposition 12] were capable of judicial balancing, I would permit petitioners to proceed with their *Pike* claim." *NPPC II*, 598 U.S. at 393–94 (Barrett, J., concurring in part). According to Justice Barrett, this is because petitioners' complaint alleged that "Proposition 12's costs are pervasive, burdensome, and will be felt primarily (but not exclusively) outside California." *Id.* ("I disagree with my colleagues who would hold that petitioners have failed to allege a substantial burden on interstate commerce."). And, as explained above, a majority of the Court does indeed find that the burdens and benefits of Proposition 12 are capable of judicial balancing.

According to Chief Justice Roberts and the three other Justices who joined him, petitioners in *NPPC II* plausibly alleged that Proposition 12 imposes "a

substantial burden against interstate commerce" and that "*Pike* found both compliance costs and consequential market harms cognizable in determining whether the law at issue impermissibly burdened interstate commerce." *Id.* at 398 (Roberts, C.J., concurring in part and dissenting in part). The four Justices further noted that, in addition to alleging compliance costs, petitioners asserted harms "to the interstate market itself." *Id.* at 399–400 ("[D]ue to the nature of the national pork market, California has enacted rules that carry implications for producers as far flung as Indiana and North Carolina, whether or not they sell in California."). Accordingly, they would have held that "[t]he Ninth Circuit misapplied our existing *Pike* jurisprudence" and that remand was required for the court below to decide petitioners' *Pike* claim. *Id.* at 395.

So, five Justices would have found IPPA plausibly alleged that Proposition 12 imposes a substantial burden on interstate commerce. Only four Justices would conclude that Proposition 12 does not impose "substantial burdens" on interstate commerce. *See* 598 U.S. at 383–87 (Part IV-C) (Gorsuch, Thomas, Sotomayor, Kagan, J.J.).

***

Putting this all together, I read *NPPC II* as supporting the following conclusions: (i) that Proposition 12 is compatible with *Pike* balancing, and (ii) that IPPA plausibly alleged Proposition 12 imposes a substantial burden on interstate

commerce. However, these conclusions do not derive from opinions that are a "logical subset of the other." *Davis*, 825 F.3d at 1025 ("[T]he plurality and dissent do not share common reasoning whereby one analysis is a logical subset of the other." (internal quotations and citations omitted)). If they did, I would remand for the district court to decide IPPA's *Pike* claim.